UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER A. KROSS,<br><br>              Plaintiff,<br><br>  -against-<br><br>PRGX GLOBAL, INC., RONALD E. STEWART, KEVIN F. COSTELLO, MATTHEW A. DRAPKIN, WILLIAM F. KIMBLE, MYLLE H. MANGUM, GREGORY J. OWENS, and JOSEPH E. WHITTERS,<br><br>             Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Walter A. Kross ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against PRGX Global, Inc. ("PRGX" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with PRGX, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Merger") of PRGX by Ardian. Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2. On December 24, 2020, PRGX entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $7.71 in

exchange for each share of PRGX common stock they own (the "Merger Consideration").

3. On January 29, 2021, in order to convince PRGX shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of candor/disclosure.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for PRGX; (ii) the valuation analyses performed by PRGX's financial advisor, Truist Securities, Inc. ("Truist"), in support of its fairness opinion; (iii) the potential conflicts of interest faced by Truist; and (iv) the background of the Proposed Merger.

5. The special meeting of PRGX shareholders to vote on the Proposed Merger (the "Shareholder Vote") is currently scheduled for March 2, 2021. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to PRGX shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this action pursuant to Section 27 of the

Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, PRGX common stock trades on Nasdaq stock exchange, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and at all relevant times has been, a holder of PRGX common stock.

12. Defendant PRGX provides recovery audit and spend analytics services. The Company is incorporated in Georgia and its common stock trades on the Nasdaq stock exchange

under the ticker symbol "PRGX".

13. Individual Defendant Ronald E. Stewart is, and has been at all relevant times, the President, Chief Executive Officer, and a director of PRGX.

14. Individual Defendant Kevin F. Costello is, and has been at all relevant times, the Executive Chairman and director of PRGX.

15. Individual Defendant Matthew A. Drapkin is, and has been at all relevant times, a director of PRGX.

16. Individual Defendant, William F. Kimble is, and has been at all relevant times, a director of PRGX.

17. Individual Defendant Mylle H. Mangum is, and has been at all relevant times, a director of PRGX.

18. Individual Defendant Gregory J. Owens is, and has been at all relevant times, a director of PRGX.

19. Individual Defendant Joseph E. Whitters is, and has been at all relevant times, a director of PRGX.

20. The Individual Defendants referred to in ¶¶ 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with PRGX they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.    Background and the Proposed Merger**

21. PRGX ogether with its subsidiaries, provides recovery audit and spend analytics services. The Company operates through three segments: Recovery Audit Services - Americas, Recovery Audit Services - Europe/Asia-Pacific and Adjacent Services. PRGX uses advanced

information systems and processes and a technology infrastructure to conduct its audits of clients' payment transactions. The Recovery Audit Services - Americas segment represents recovery audit services it provides in the United States, Canada and Latin America. The Recovery Audit Services - Europe/Asia-Pacific segment represents recovery audit services it provide in Europe, Asia and the Pacific region. The Adjacent Services segment includes its software-as-a-service (SaaS) and advisory advanced analytics solutions provided to clients worldwide.

22. Ardian, formerly Axa Private Equity, is a private equity firms with $103 billion managed or advised in Europe, the Americas and Asia. The company is majority-owned by its employees. Ardian has more than 700 employees working from fifteen offices across Europe (Frankfurt, Jersey, London, Luxembourg, Madrid, Milan, Paris and Zurich), the Americas (New York, San Francisco and Santiago) and Asia (Beijing, Singapore, Tokyo and Seoul). It manages funds on behalf of around 1,000 clients through: Fund of Funds, Direct Funds, Infrastructure, Real Estate and Private Debt.

23. On December 24, 2020, PRGX issued a press release announcing the Proposed Merger, which states in relevant part:

> Ardian Enters into Definitive Agreement to Acquire PRGX
>
> *Shareholders to receive $7.71 per share in cash in a transaction valued at approximately $195 million*
>
> *Transaction expected to accelerate technology roadmap and fuel growth*
>
> ATLANTA AND NEW YORK – December 24, 2020 – PRGX Global, Inc. (Nasdaq: PRGX), a global leader in recovery audit and spend analytics services, and Ardian, a world-leading private investment house, today announced that they have entered into a definitive agreement for Ardian to acquire PRGX. The transaction is led by Ardian's North America Direct Buyouts team.
>
> Under the terms of the agreement, Ardian will pay PRGX shareholders $7.71 per share in cash for each share of PRGX's common stock they hold, which represents a 32.7% premium to the PRGX volume-weighted average price for the 90 trading

days preceding the public announcement of the transaction with Ardian. The all-cash transaction, subject to completion, is valued at approximately $195 million. The members of the PRGX Board of Directors are unanimously in favor of the transaction, which was approved at a special meeting of the Board. Upon closing, PRGX will operate as a privately held company.

As a private entity, PRGX expects to expedite the rollout of the PRGX Verigon™ Solution Suite, continue investing in improved audit and analytics processes, and increasingly focus on mid- to long-term business strategy – investments designed to accelerate delivery of PRGX's mission to reach wider, dig deeper and act faster to help clients get more value out of their source-to-pay data.

"The Ardian transaction delivers significant value for PRGX's shareholders and marks the beginning of the next chapter of our journey with our clients," said PRGX President and CEO, Ron Stewart. "We look forward to partnering with the Ardian team to accelerate the launch and delivery of our vision of source-to-pay as fully technology-enabled, accelerating speed to value for clients globally."

"PRGX is a global leader in its field, pioneering the recovery audit industry more than 50 years ago and consistently driving innovation over the past five decades," said Vince Fandozzi, Head of Ardian North America Direct Buyouts.

"We are truly impressed with PRGX Executive Management and the entire team of employees and look forward to partnering with the Company to grow its global presence and usher it into its next phase of growth," added Todd Welsch, Managing Director, Ardian North American Buyouts.

Greg Owens, Executive Chairman of the Board, said, "The Board of Directors explored numerous strategic alternatives and carefully considered the best way to position PRGX for long-term success. We are confident that the transaction with Ardian is the best path to strengthen and position PRGX in the marketplace and deliver the highest value to the Company's shareholders."

PRGX is the world's largest Accounts Payable and Merchandise Recovery Audit firm, serving clients in more than 30 countries in North and South America, Europe, Asia and Oceania. PRGX provides technology-enabled source-to-pay solutions to clients across industries including retail, grocery, consumer packaged goods, manufacturing, pharmaceuticals, and oil and gas, among others.

Transaction Details

Pursuant to the terms of the agreement, Ardian will acquire all of the outstanding shares of PRGX's common stock, in an all-cash transaction, for $7.71 per share. Closing of the transaction is conditioned upon, among other things, receipt of shareholder approval, clearance under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976, as amended, and other customary closing conditions.

> The closing of the transaction is not conditioned on financing. PRGX expects the transaction to close during the first quarter of 2021.
>
> Each of PRGX's directors and executive officers and Northern Right Capital Management, L.P., a shareholder of PRGX, have agreed to vote their shares in favor of the definitive merger agreement and the merger, subject to certain terms and conditions. These shareholders collectively own approximately 14% of PRGX's outstanding shares as of the date of the merger agreement. The support agreements will terminate upon termination of the merger agreement in accordance with its terms in order for PRGX to accept a superior offer and upon certain other circumstances.
>
> Truist Securities, Inc. is acting as financial advisor to PRGX, and Troutman Pepper Hamilton Sanders LLP is serving as legal advisor to PRGX. Sheppard, Mullin, Richter & Hampton LLP is serving as legal advisor to Ardian.

24.     The Merger Consideration represents inadequate compensation for PRGX shares. The Company is fresh off back-to-back quarters of positive financial results, exceeding guidance, and raising guidance further. This caused multiple wall street analysts to raise their price targets to $8-$9—well in excess of the $7.71 Merger Consideration. Moreover, the Merger Consideration represents a derisory 0.78% premium to the Company's high trading price of $7.65 the day before the announcement of the Proposed Merger. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**II.     The Proxy Omits Material Information**

25.     On January 29, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an

informed decision in connection with the Proposed Merger.

### A. The Misleadingly Incomplete Financial Projections

26. First, the Proxy omits critical financial projections, including the net income projections for PRGX (the "Net Income Projections"). Defendants elected to summarize the Company's financial projections, but they excised and failed to disclose the Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the tables of projections on page 42 of the Proxy materially incomplete and provide a misleading valuation picture of PRGX. Simply put, net income projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

27. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Truist and the Board but have omitted the Net Income Projections. These omissions render the summary of the projection tables and the Company's financial picture in the Proxy misleadingly incomplete.

### B. The Misleadingly Incomplete Summary of Truist's Fairness Opinion

28. The Proxy describes Truist's fairness opinion and the various valuation analyses performed in support of their opinion. Defendants concede the materiality of this information in

8

citing Truist's fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to PRGX shareholders. Proxy at 37. However, the summary of Truist's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, PRGX shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Truist's fairness opinion in determining how to vote on the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to PRGX shareholders.

29. First, in summarizing the *Discounted Cash Flow Analysis* prepared by Truist, the Proxy fails to disclose the following key information used in the analyses: (i) the inputs and assumptions underlying the discount rate range (including the values of the company-specific WACC/CAPM components); and (ii) the actual terminal values calculated for the analysis.

30. These key inputs are material to PRGX shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult

> to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

31. Without the above-omitted information, PRGX shareholders are misled as to the reasonableness or reliability of Truist's analysis, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy misleadingly incomplete.

### C. Truist's Conflicts of Interest

32. The Proxy fails to disclose any historical relationships, or compensation received or expected to be received therefrom, between Truist, or any affiliates thereof, on the one hand, and the Company, Ardian, or any affiliates thereof, on the other.

33. Disclosure of any compensation received or to be received as a result of the relationship between a financial advisor issuing a fairness opinion and the subject company is required pursuant to federal securities regulations. 17 CFR § 229.1015; 17 CFR § 240.14a-101. Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have.

34. On page 46 the Proxy states that "Truist Securities and its affiliates may in the

future provide investment banking and other financial services to the Company, Parent, and/or certain of their respective affiliates for which Truist Securities and its affiliates would expect to receive compensation. . . . In addition, Truist Securities and its affiliates (including Truist Bank and Truist Financial Corporation) may have other financing and business relationships with the Company, Parent and their respective affiliates." However, the Proxy fails to state whether they, or their affiliates, have provided services in the past, or are currently aware of compensation they expect to receive. Therefore, the omission of the above information renders the statements provided on page 46 of the Proxy, and the Truist fairness opinion, misleadingly incomplete, and in violation of federal securities regulations.

### D.  The Misleadingly Incomplete Background of the Proposed Merger

35.     The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger that omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

36.     The Proxy states that during the sales process the Company entered into non-disclosure agreements with multiple parties, but fails to disclose whether these NDAs contained standstill provisions and/or "don't ask don't waive" ("DADW") provisions, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. In entering the Merger Agreement, PRGX agreed not to "terminate, amend, release, modify or fail to enforce any provision (including any standstill or similar provision) of, or grant any permission, waiver or request under, any confidentiality, standstill or similar agreement." Proxy at

11

76-77. This indicates that these provisions were in place at the time of the Merger Agreement.

37. The express communication of the existence of these provisions is material to PRGX shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. However, if those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the summary provided in the Background of the Merger section of the Proxy misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

38. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

43.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections; (ii) valuation analyses performed by Truist; (iii) the conflicts of interest faced by Truist; and (iv) the background of the Proposed Merger.

44.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

45. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Truist reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Truist, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Truist's analyses in connection with their receipt of the fairness opinion, question Truist as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or

failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

47. PRGX is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

48. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of PRGX shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of PRGX within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

53. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**Against the Individual Defendants for Breach of the Fiduciary Duty of Candor/Disclosure**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

59. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

60. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of PRGX shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 4, 2021                             **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*